## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Case No. _____**

STATE OF FLORIDA

        *Plaintiff*,

    vs.

TYCO FIRE PRODUCTS LP;
CHEMGUARD, INC.; BUCKEYE
FIRE EQUIPMENT COMPANY;
NATIONAL FOAM, INC.; KIDDE-
FENWAL, INC.; DYNAX
CORPORATION; E.I. DU PONT DE
NEMOURS & COMPANY; THE
CHEMOURS COMPANY; THE
CHEMOURS COMPANY FC, LLC;
CORTEVA, INC.; DUPONT DE
NEMOURS, INC.; UTC FIRE &
SECURITY AMERICAS
CORPORATION, INC.; CARRIER
GLOBAL CORPORATION;
CLARIANT CORPORATION;
ARCHROMA U.S., INC.; BASF
CORPORATION; ARKEMA, INC.;
CHEMICALS INCORPORATED;
MINE SAFETY APPLIANCE
COMPANY, LLC; GLOBE
MANUFACTURING COMPANY,
LLC; W.L. GORE & ASSOCIATES,
INC.; AMEREX CORPORATION;
DAIKIN AMERICA, INC.;
HONEYWELL INTERNATIONAL,
INC.; and HONEYWELL SAFETY
PRODUCTS USA, INC.,

        *Defendants*.

## NOTICE OF REMOVAL

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco" unless identified individually by full name), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1), and 1446, from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, to the United States District Court for the Middle District of Florida.  As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiff State of Florida seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that was allegedly used and discharged "throughout Florida," including at and around military installations and civilian airports.

2.      Specifically, Plaintiff alleges that Defendants' AFFF products contained perfluorooctanoic acid ("PFOA"), perfluorooctanesulfonic acid ("PFOS"), and/or chemical precursors that transform into PFOA and/or PFOS, and that the use of those products throughout Florida has caused contamination to water supplies, property, and natural resources of the State.

3.     At least some of the AFFF that has contributed to the contamination about which Plaintiff complains has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco claims immunity from tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4.     This action was filed on April 15, 2022, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, bearing Case No. 2022-CA-003265. (DE 1-1 at 1, Compl.).  Plaintiff filed an Amended Complaint on December 6, 2022.  (DE 1-1 at 37, Am. Compl.).

5.     Tyco accepted service on December 8, 2022.  This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1).

6.     In accordance with Local Rule 1.06(b), Tyco is filing with this Notice of Removal copies of all process, pleadings, orders, and other papers on file in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.  (DE 1-1; DE 1-2; DE 1-3).

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 89(b) and 1441(a) because the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida is located within the Middle District of Florida.

8.     Tyco is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1–2 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

9.     Plaintiff generally alleges that Defendants, including Tyco, designed, manufactured, marketed, distributed, and/or sold AFFF that contained PFOA, PFOS, and/or their chemical precursors.   (DE 1-1, Am. Compl. ¶¶ 1, 4–5, 101–103). Plaintiff alleges that the use or discharge of AFFF manufactured by Defendants, or containing PFOA- or PFOS-containing constituents manufactured by Defendants, occurred "throughout Florida," including "at military installations, civilian airports, industrial facilities, firefighting training centers, and other facilities" in Florida.  (*Id.*

¶¶ 4, 101).  Plaintiff further alleges that "Defendants' action in placing AFFF and/or PFOA/S products into the stream of commerce was a direct and proximate cause of Florida's damages."  (*Id.* ¶ 204; *see id.* ¶¶ 194, 205, 221, 225).

10.    Plaintiff seeks damages for costs "incurred and to be incurred by the State in investigating, monitoring, remediating, and otherwise responding to injuries and/or threats to public health and the environment caused by Defendants' products; and . . . damages for harm to the State's natural resources."  (*Id.* ¶ 5).  Plaintiff also seeks other economic and non-economic damages, restitution, and injunctive relief.  (*Id.* ¶ 5; Prayer for Relief at 38.)

11.    Plaintiff asserts claims against all Defendants for public nuisance (*id.* ¶¶ 168–179); strict products liability for defective design (*id.* ¶¶ 180–195); strict products liability for failure to warn (*id.* ¶¶ 196–206); restitution (*id.* ¶¶ 207–214); negligence (*id.* ¶¶ 215–221); and trespass (*id.* ¶¶ 222–225).  Additionally, Plaintiff asserts a claim for violation of the Florida Uniform Fraudulent Transfer Act against Defendants E. I. DuPont de Nemours & Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont De Nemours, Inc.  (*Id.* ¶¶ 226–237).

12.    Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County,

Florida.

13.     By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

14.     Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

15.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.   Removal is appropriate under this provision where the removing defendant alleges that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions under federal authority have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it asserts a "colorable" federal defense.   *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

16.     Removal rights under the federal officer removal statute are much

broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citations omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original; internal quotation marks omitted).

17.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y.

Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.  Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

## A.    MilSpec AFFF

18.    The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments.  Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

*Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, train its personnel, save lives, and protect property. Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety[.]"[3]

19.    The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the Department of Defense ("DoD") Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

satisfy the MilSpec's requirements.   After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]   Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

20.   From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of chemical compounds that includes PFOA and PFOS and their chemical precursors. Those are the very compounds at issue in the Amended Complaint here.[7]   That requirement was in force for virtually the entire time period at issue in the Amended Complaint.   In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly contemplates that AFFF formulations will unavoidably contain some amounts of PFOA or PFOS (subject to recently imposed limits).

21.   Part 139 airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft.  *See* 14 C.F.R. § 139.1 (2019).  The federal government requires Part

---

[6] *Id.*

[7] *See* Mil-F-24385 § 3.2 (1969).

139 airports to use MilSpec AFFF.  On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[8]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[9]  On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

22.     The website of the Florida Department of Environmental Protection ("DEP") identifies 28 current or former DoD facilities that are confirmed or suspected sites of AFFF release.[11]  The AFFF used and released at those sites was MilSpec AFFF, some of which was manufactured by Tyco.  DEP's website states:

---

[8] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[9] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

[11] *See* PFAS Investigation at Federal Facilities: Efforts to Address PFOA and PFOS in the Environment (May 25, 2021), https://floridadep.gov/waste/waste-cleanup/content/pfas-investigation-federal-facilities.

"DEP has been coordinating with the Department of Defense (DOD) on investigation of the use of and historic discharges of Aqueous Film Forming Foam (AFFF) and its related chemicals which include perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS)."[12] Plaintiff has incurred costs investigating some or all of those 28 sites, and those costs are among the damages it seeks to recover in this action. (*See* Am. Compl. ¶¶ 111–112).

23.     There are 26 Part 139 airports in Florida.[13] Those airports are required to stock and use MilSpec AFFF, some of which has been manufactured by Tyco. Releases of MilSpec AFFF have occurred at some or all of those airports. Plaintiff has incurred costs investigating AFFF releases at Part 139 airports in Florida, including Pensacola International Airport, and those costs are among the damages it seeks to recover in this action.

## B.     All The Requirements Of 28 U.S.C. § 1442(a)(1) Are Satisfied

### 1.     *The "Person" Requirement Is Satisfied*

24.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes

---

[12] *Id.*

[13] *See* FAA Part 139 Airport Certification Status List (last updated Dec. 15, 2022), available at https://www.faa.gov/airports/airport_safety/part139_cert/.

"corporations, companies, associations, firms, [and] partnerships[.]" *Papp*, 842 F.3d

at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085

(6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

### 2.    The "Acting Under" Requirement Is Satisfied

25.    The second requirement ("acting under" a federal officer) is satisfied

when an entity assists or helps carry out, the duties or tasks of a federal officer.

*Papp*, 842 F.3d at 812.  The phrase "acting under" is to be "liberally construed in

favor of the entity seeking removal."  *Sawyer*, 860 F.3d at 255 (internal quotation

marks omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement

as satisfied where a contractor seeks to remove a case involving injuries arising from

equipment that it *manufactured for the government*."  *Id.* (emphasis in original).

26.    The requirement of "acting under" a federal officer is met here because

the effect of Plaintiff's claims, at least in part, is to challenge Tyco's alleged conduct

in providing vital products "that, in the absence of Defendants, the Government

would have had to produce itself."  *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a

mission-critical military and aviation safety product that, without the support of

private contractors, the government would have to produce for itself.  *See Ayo*, 2018

WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-

saving product" used by all branches of the U.S. armed forces and NATO members

(internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137.  The Naval

Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[14]   Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF.  *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–4 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–4; MDL Order 3, at 3–4 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

27.   In designing, manufacturing, and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of federal officers.  Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by

---

[14] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

the military and for inclusion on the Qualified Products List maintained by the DoD.[15]

### 3.   *The Nexus Requirement Is Satisfied*

28.    The third requirement, that the defendant's actions taken under color of federal office have a causal nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137.[16] To show the required nexus, it is sufficient for a defendant to establish a connection or association between the lawsuit and the actions taken under federal authority. *Sawyer*, 860 F.3d at 258.

29.    Here, Plaintiff's claims arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications.  Plaintiff alleges that the presence of PFOA, PFOS, and/or their chemical precursors in AFFF is a source of its injuries.  Tyco contends that the presence of such chemicals in MilSpec AFFF was required by military specifications and knowingly approved by DoD.  The conflict is apparent: MilSpec AFFF was developed by Tyco, and other manufacturers to meet specifications established by the DoD.  The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which

---

[15] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[16] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

Tyco could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

30.     Here, Plaintiff's purported injuries arise at least in part from Tyco's manufacture and sale of MilSpec AFFF.  The causal connection or relationship between Plaintiff's alleged injuries and Tyco's actions under color of federal office is clear.  It is irrelevant that the Complaint does not expressly mention MilSpec AFFF as such.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

4.   *The "Colorable Federal Defense" Requirement Is Satisfied*

31.   The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

32.   At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"   *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).   "A defendant 'need not win his case before he can have it removed.'"   *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).   At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."   *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.   Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).   Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants[.]"   *Hagen v. Benjamin*

*Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (alteration in original; citation omitted).

33.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Boyle*, 487 U.S. at 512.

34.     Tyco has satisfied these elements for purposes of removal.   As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.   Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including

PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

35.    Moreover, for purposes of removal, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[17]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated

---

[17] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[18]  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires[.]"[19]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFOS and/or PFOA will be present (subject to recently imposed limits for PFOS and PFOA) in the surfactants used in AFFF formulations.[20]  *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved

---

[18] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[19] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[20]  *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

reasonably precise specifications for the claimed defective design." (citation omitted)); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

36.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)).  Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies.  *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *10, 12–13.

37.     Tyco's use of surfactants containing PFOA or their chemical precursors in MilSpec AFFF was required by military specifications and approved by DoD.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff

that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military.   The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

38.   In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other defendants presents genuine issues of fact for trial.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, Order Denying Partial Summary Judgment, ECF No. 2601 (D.S.C. Sept. 16, 2022).  A defense that presents triable issues is by definition better than merely "colorable."

\*       \*       \*

WHEREFORE, Tyco hereby removes this action from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to the United States District Court for the Middle District of Florida.

Dated:  December 22, 2022                Respectfully submitted,

                                         */s/ Michael D. Sloan*
                                         Michael D. Sloan (Fla. Bar No. 104385)
                                         **CARLTON FIELDS, P.A.**
                                         CityPlace Tower
                                         525 Okeechobee Blvd., Ste. 1200
                                         West Palm Beach, Florida 33401
                                         Telephone: (561) 822-2979
                                         Facsimile: (561) 659-7368
                                         E-mail: msloan@carltonfields.com

                                         *Counsel for Defendants Tyco Fire Products*
                                         *LP & Chemguard, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that copies of the foregoing **NOTICE OF REMOVAL,** with its Exhibits, were served on all parties on the attached Service List, in the manner specified, on December 22, 2022.

*/s/ Michael D. Sloan*
Michael D. Sloan

## SERVICE LIST

| | |
|---|---|
| John Guard<br>R. Scott Palmer<br>Gregory S. Slemp<br>Andrew H. Butler<br>Christopher A. Knight<br>FLORIDA ATTORNEY GENERAL<br>Department of Legal Affairs<br>PL-01, The Capitol<br>Tallahassee, Florida 32399-1050<br>Telephone:  (850) 414-3300<br>Facsimile: (850) 488-4872<br>John.Guard@myfloridalegal.com<br>Greg.Slemp@myfloridalegal.com<br>Andrew.Butler@myfloridalegal.com<br>Christopher.Knight@myfloridalegal.com<br>*Counsel for Plaintiff*<br><u>Served via E-mail</u> | Jonathan I. Handler<br>Keith H. Bensten<br>DAY PITNEY LLP<br>One Federal Street, 29th Floor<br>Boston, MA 02110<br>Telephone: (617) 345-4600<br>Facsimile: (617) 345-4745<br>kbensten@daypitney.com<br>jihandler@daypitney.com<br>*Counsel for Defendants Kidde-*<br>*Fenwal, Inc., Carrier Global*<br>*Corporation, and UTC Fire &*<br>*Security Americas Corporation, Inc.*<br><u>Served via E-mail</u> |
| David R. Erickson<br>Brent Dwerlkotte<br>SHOOK, HARDY & BACON L.L.P.<br>2555 Grand Blvd.<br>Kansas City, MO<br>Telephone:  (816) 474-6550<br>Facsimile: (816) 421-5547<br>derickson@shb.com<br>dbdwerlkotte@shb.com<br>*Counsel for Defendants E. I. duPont de*<br>*Nemours and Company, The Chemours*<br>*Company, and The Chemours Company*<br>*FC, LLC*<br><u>Served via E-mail</u> | Kat Hacker<br>BARTLIT BECK LLP<br>1801 Wewatta, Suite 1200<br>Denver, Colorado 80202<br>Telephone: (303) 592-3141<br>Facsimile: (303) 592-3140<br>dupont@bartlitbeck.com<br>*Counsel for Defendants Corteva,*<br>*Inc. and DuPont de Nemours, Inc.*<br><u>Served via E-mail</u> |
| | Keith E. Smith<br>GREENBERG TRAURIG, LLP<br>Three Logan Square<br>1717 Arch Street, Suite 400<br>Philadelphia, PA 19103<br>Telephone: (215) 988-7800 |

| | |
|---|---|
| | Facsimile: (215) 988-7801<br>smithkei@gtlaw.com<br>*Counsel for Defendant National Foam Inc.*<br><u>Served via E-mail</u> |
| Michael L. Carpenter<br>GRAY LAYTON KERSH SOLOMON FURR & SMITH, P.A.<br>Post Office Box 2636<br>Gastonia, North Carolina 28053-2636<br>Telephone: (704) 865-4400<br>Facsimile: (704) 866-8010<br>mcarpenter@gastonlegal.com<br>*Counsel for Defendant Buckeye Fire Equipment Company*<br><u>Served via E-mail</u> | Heidi Levine<br>SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br>hlevine@sidley.com<br>*Counsel for Defendant Arkema, Inc.*<br><u>Served via E-mail</u> |
| John Wellschlager<br>DLA PIPER LLP (US)<br>The Marbury Building<br>6224 Smith Avenue<br>Baltimore, MD 21209-3600<br>Telephone: (410) 580-4281<br>Facsimile: (410) 580-3001<br>john.wellschlager@dlapiper.com<br>*Counsel for Defendant BASF Corporation*<br><u>Served via E-mail</u> | Kirk G. Warner<br>Clifton L. Brinson<br>Addie K.S. Ries<br>SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN,<br>L.L.P.<br>Post Office Box 2611<br>Raleigh, North Carolina 27602-2611<br>Telephone: (919) 821-1220<br>Facsimile: (919) 821-6800<br>kwarner@smithlaw.com<br>cbrinson@smithlaw.com<br>aries@smithlaw.com<br>*Counsel for Defendant Dynax Corporation*<br><u>Served via E-mail</u> |

| | |
|---|---|
| Melanie Black Dubis<br>Charles Raynal<br>PARKER POE ADAMS &<br>BERNSTEIN<br>LLP<br>301 Fayetteville Street, Suite 400<br>Raleigh, NC 27601<br>Telephone: (919) 835-4511<br>Facsimile: (919) 834-4564<br>charlesraynal@parkerpoe.com<br>melaniedubis@parkerpoe.com<br>*Counsel for Defendants Archroma U.S.,*<br>*Inc. and Clariant Corporation*<br>Served via E-mail | John Parker<br>Oliver Twaddell<br>GOLDBERG SEGALLA LLP<br>711 Third Ave. Suite 1900<br>New York, NY 10017<br>Telephone: (646) 292-8700<br>Facsimile: (646) 292-8701<br>jparker@goldbergsegalla.com<br>otwaddell@goldbergsegalla.com<br>*Counsel for Defendant Chemicals*<br>*Inc.*<br>Served via E-mail |
| Brandon P. Rainey<br>Clement L. Glynn<br>GLYNN, FINLEY, MORTL, HANLON<br>& FRIEDENBERG, LLP<br>One Walnut Creek Center<br>100 Pringle Avenue, Suite 500<br>Walnut Creek, CA 94596<br>Telephone: (925) 210-2800<br>Facsimile: (925) 945-1975<br>brainey@glynnfinley.com<br>cglynn@glynnfinley.com<br>*Counsel for Defendant Mine Safety*<br>*Appliance Company, LLC and Globe*<br>*Manufacturing Company, LLC*<br>Served via E-mail | |

| | |
|---|---|
| Jeremy B Esterkin<br>Yardena Rachel Zwang-Weissman<br>MORGAN LEWIS & BOCKIUS LLP<br>300 South Grand Avenue<br>Twenty-Second Floor<br>Los Angeles, CA 90071-3132<br>Telephone: (213) 680-6843<br>Facsimile: (213) 612-2501<br>jeremy.esterkin@morganlewis.com<br>yardena.zwang-<br>weissman@morganlewis.com<br>*Counsel for W.L. Gore & Associates, Inc.*<br><u>Served via E-mail</u> | Jennifer Simon<br>Alan Truitt<br>KAZMAREK MOWREY CLOUD<br>LASETER LLP<br>1230 Peachtree Street N.E., Suite 900<br>Atlanta, Georgia 30309<br>Telephone: (404) 812-0126<br>Facsimile: (404) 812-0845<br>jsimon@kmcllaw.com<br>atruitt@kmcllaw.com<br>*Counsel for Amerex Corporation*<br><u>Served via E-mail</u> |
| Rebekah E. Blake<br>Theodore M. Grossman<br>JONES DAY<br>250 Vesey Street<br>New York, New York 10281-1047<br>Telephone: (212) 326-3743<br>Facsimile: (212) 755-7306<br>reblake@jonesday.com<br>tgrossman@jonesday.com<br>*Counsel for Daikin America, Inc.*<br><u>Served via E-mail</u> | Kurt D. Weaver<br>WOMBLE BOND DICKINSON<br>555 Fayetteville Street<br>Suite 1100<br>Raleigh, NC 27601<br>Telephone: (919)-755-8163<br>Facsimile: (919) 755-2150<br>Kurt.Weaver@wbd-us.com<br>*Counsel for Honeywell International, Inc. and Honeywell Safety Products USA, Inc.*<br><u>Served via E-mail</u> |